```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW HAMPSHIRE
```

Marcia Gay Piper

    v.                                          Civil No. 16-cv-455-JL
                                                      Opinion No. 2018 DNH 060

Nancy A. Berryhill,
Acting Commissioner, U.S.
Social Security Administration,


**ORDER ON APPEAL**

Marcia Gay Piper has appealed the Social Security Administration's ("SSA") denial of her application for a period of disability and disability insurance benefits. An administrative law judge ("ALJ") at the SSA ruled that, despite severe impairments, Piper retains the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy, and thus is not disabled. See 20 C.F.R. §§ 404.1505(a), 416.905(a). The Appeals Council later denied Piper's request for review, see id. § 404.967, with the result that the ALJ's decision became the final decision on her application, see id. § 404.981. Piper then appealed the decision to this court, which has jurisdiction under 42 U.S.C. § 405(g) (Social Security).

Piper has moved to reverse the decision. See LR 9.1(b). The Acting Commissioner of the SSA has cross-moved for an order affirming the ALJ's decision. See LR 9.1(e). After careful

consideration, the court denies Piper's motion and grants the Acting Commissioner's motion.

I. **Applicable legal standard**

The court limits its review of a final decision of the SSA "to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). It "review[s] questions of law de novo, but defer[s] to the Commissioner's findings of fact, so long as they are supported by substantial evidence," id., that is, "such evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). Though the evidence in the record may support multiple conclusions, the court will still uphold the ALJ's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

II. **Background**[1]

The ALJ invoked the requisite five-step sequential evaluation process in assessing Piper's request for disability

---

[1] The court recounts here only those facts relevant to the instant appeal. The parties' more complete recitation in their

and disability insurance benefits. See 20 C.F.R. §§ 404.1520, 416.920. After determining that Piper had not engaged in substantial gainful activity after the alleged onset of her disability on July 22, 2013, the ALJ analyzed the severity of her impairments. At this second step, the ALJ concluded that Piper had several severe impairments: depression, anxiety, a personality disorder, polysubstance abuse, and degenerative disc disease (cervical and lumbar spine).[2]

At the third step, the ALJ found that Piper's severe impairments did not meet or "medically equal" the severity of one of the impairments listed in the Social Security regulations.[3] See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. After reviewing the medical evidence of record, Piper's own statements, and the opinions of a medical consultative examiner, Dr. Matthew J. Masewic, M.D., a State agency medical consultant, Dr. Natacha Sochat, M.D., a State agency psychological consultant, Dr. Edward Martin, Ph.D.,[4]

---

Joint Statement of Material Facts (doc. no. 12) is incorporated by reference. See LR 9.1(d).

[2] Admin. R. at 22.

[3] Id.

[4] In his decision, the ALJ refers to Dr. Edward Martin as "Edward Healy." See Admin. R. at 27, 87. The parties agree that the opinion that the ALJ cited as Dr. Healy's was in fact Dr. Martin's, and argue their respective positions accordingly.

3

and Piper's treating physicians, Dr. Eric Lewis, M.D., and Dr. Lester Nicholson, M.D., the ALJ concluded that Piper retained the RFC to perform light work with a variety of limitations.[5]  Finding that, even limited in this manner, Piper was able to perform jobs that exist in significant numbers in the national economy, see 20 C.F.R. §§ 404.1566 and 416.966, the ALJ concluded his analysis and found that Piper was not disabled within the meaning of the Social Security Act.

**III. Analysis**

Piper challenges the ALJ's treatment of the opinion evidence concerning both her physical and mental impairments.  With respect to her physical impairments, she contends that the ALJ relied on his own lay knowledge in forming her RFC.  As to her mental impairments, she contends that the ALJ improperly weighed the opinion evidence of her treating psychiatrist, Dr. Nicholson, and an agency consultant, Dr. Martin.  As discussed below, the court finds no error on either front.

---

See Plaintiff's Mem. (doc. no. 8-1) at 9; Defendant's Mem. (doc. no. 11-1) at 8-8; Joint Statement of Facts (doc. no. 12) at 9.

[5] Admin. R. at 24-28.

**A. Physical impairments**

The ALJ found that Piper suffered one severe physical impairment -- degenerative disc disease.[6] The ALJ concluded that Piper has the RFC to perform light work, see 20 C.F.R. § 404.1567(b), with the physical limitations that "[s]he is able to occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes and scaffolds."[7] In crafting this RFC, the ALJ relied on two medical opinions concerning Piper's physical impairments.[8] He afforded "great weight" to the opinion of Dr. Masewic, the medical consultative examiner, and "less than great weight" to the opinion of Dr. Sochat, the state agency medical consultant.[9]

Piper challenges the ALJ's physical RFC determination on two fronts. First, she argues that the ALJ based that RFC on his own, lay interpretation of raw medical data, because no medical opinion addressed Piper's back troubles on a function-by-function basis.[10] She also argues that the ALJ erred in relying on Dr. Masewic's opinion, which was rendered without the

---

[6] Admin. R. at 22.

[7] Admin. R. at 24.

[8] Id. at 26-27.

[9] Id. at 26-27.

[10] Plaintiff's Mem. (doc. no. 8-1) at 4.

5

benefit of all of her medical records.[11]  The court finds no error here.

**Lay interpretation**.  "Although determination of a claimant's RFC is an administrative decision that is the responsibility of the Commissioner, an ALJ, as a lay person, cannot interpret a claimant's medical records to determine his RFC.  An ALJ must rely to some degree on RFC evaluations from a physician or another expert."  Delafontaine v. Astrue, 2011 DNH 005, 25-26.  "[A]lthough an ALJ cannot ab initio interpret medical records to determine a claimant's RFC, he can 'render[ ] common-sense judgments about functional capacity based on medical findings.'"  Id. at 26 (quoting Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 329 (1st Cir. 1990)); see also Graham v. Barnhart, No. 02-243, 2006 WL 1236837, at *7 (D.N.H. May 9, 2006) (Barbadoro, J.).  "Thus, observations from medical sources can still inform the ALJ's RFC determination even where the medical source does not explicitly address the claimant's functional limitation 'as long as the [ALJ] does not overstep the bounds of a lay person's competence and render a medical judgment.'"  Couture v. Colvin, 2015 DNH 128, 14 (quoting Gordils, 921 F.2d at 329).

---

[11] Id. at 5-6.

Here, as in [Couture](), the ALJ did not interpret the raw medical data, but "properly grounded his RFC assessment not in raw medical data, but in Dr. Masewic's medical findings." [2015 DNH 128, 14](). Dr. Masewic based those findings on his examination of Piper's medical records and, importantly, Piper herself.[12] The ALJ did not err when he crafted an RFC taking into account those findings, as well as those of Dr. Sochat and other record evidence.[13]

**Post-dating evidence**. Dr. Masewic issued his opinion on October 19, 2013. Piper submitted medical evidence for the ALJ's review post-dating that opinion. Piper also argues that the ALJ erred by giving great weight to Dr. Masewic's opinion when Dr. Masewic did not review all relevant evidence concerning her back condition.[14]

"It can indeed be reversible error for an administrative law judge to rely on an RFC opinion of a non-examining consultant when the consultant has not examined the full medical record." [Strout v. Astrue, Civil No. 08-181-B-W, 2009 WL]()

---

[12] See Admin. R. at 26.

[13] Piper appears to suggest that the ALJ ought to have interpreted the results of multiple MRIs taken in 2014 to conclude that she suffered greater limitations. See Plaintiff's Mem. (doc. no. [8-1]()) at 5-6. Unlike his reliance on Dr. Masewic's findings, such a lay interpretation may well constitute an improper interpretation of raw medical data.

[14] Id. at 5.

7

214576, at *8 (D. Me. Jan. 28, 2009) (citing Rose v. Shalala, 34 F.3d 13, 18 (1st Cir. 1994)). "However, an ALJ may rely on such an opinion where the medical evidence postdating the reviewer's assessment does not establish any greater limitations, or where the medical reports of claimant's treating providers are arguably consistent with, or at least not 'clearly inconsistent' with, the reviewer's assessment." Ferland v. Astrue, 2011 DNH 169, 11 (internal citations omitted). Here, the ALJ reviewed the subsequent evidence and did not conclude that it supported greater limitations.[15] The court, accordingly, finds no error.

**B.    Mental impairments**

The ALJ also concluded that Piper suffered from several severe mental impairments, including depression, anxiety, a personality disorder, and polysubstance abuse.[16] In crafting her RFC, he determined that she could perform light work, see 20 C.F.R. § 404.1567(b), but limited her to "simple and unskilled work" with a variety of additional limitations, such as that she "avoid social interaction with the general public," but could "sustain brief and superficial social interaction with coworkers and supervisors," and would be "able to maintain attention and concentration[ ] for two hour increments throughout an eight-

---

[15] Admin. R. at 25-27.

[16] Id. at 22.

8

hour workday in a low stress environment . . . ."[17]  In doing so, the ALJ relied on the opinions of the state agency psychological consultant, Dr. Martin, and Piper's treating psychologist, Dr. Nicholson.[18]  Piper contends that the ALJ erred in his reliance, or lack thereof, on these opinions.

**Dr. Nicholson.**  Piper challenges the ALJ's treatment of Dr. Nicholson's opinions in three ways.  None warrant reversal.

First, she contends that, though the ALJ considered Dr. Nicholson's February 3, 2015 opinion, he improperly ignored Dr. Nicholson's September 20, 2013 opinion.  The ALJ is, of course, obligated to evaluate every medical opinion in the record.  20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive.").  "Ordinarily, therefore, an ALJ's failure to consider a medical opinion in the record is legal error that requires remand."  Muniz v. Berryhill, 2017 DNH 195, 18 (citing Rosado v. Sec'y of Health and Human Servs., 807 F.2d 292, 293 (1st Cir. 1986)).  There are, however, "limited exceptions" to this rule, such as that "an ALJ need not address specific evidence in the record that

---

[17] Admin. R. at 24.

[18] In his decision, the ALJ refers to Dr. Lester Nicholson as both "Dr. Lester" and "Dr. Nicholson."  See id. at 28.  Piper acknowledges that these are the same individual. Plaintiff's Mem. (doc. no. 8-1) at 10 n.2.

9

either does not support the claimant's position or simply repeats other evidence that the ALJ's decision does consider." [Grenier v. Colvin, 2015 DNH 133, 6](#).

In his 2015 opinion, Dr. Nicholson explained that he first saw Piper on July 22, 2013, and that, at that time, "she was much like she is currently."[19] His 2015 opinion largely reflects the same observations as made in his 2013 opinion, including: that Piper appeared to have a "childlike tone and manner" with poor eye contact[20]; chronic depression and anxiety[21]; that she performs daily activities around the house[22]; that she interacts "with acquaintances [without] difficulty generally but is quick to become angry and feel threatened if feels criticized"[23]; difficulty with concentration and energy[24]; and that she has difficulty controlling her temper.[25] It then expands on those

---

[19] Admin. R. at 640.

[20] Id. at 384, 635.

[21] Id. at 384, 635.

[22] Id. at 385 (cooking, gardening, spending time on the computer, watching TV, reading, etc.)

[23] Id. at 385, 638 (indicating "extreme sensitivity to criticism").

[24] Id. at 385 (indicating "difficulty . . . with energy"), 636 (indicating "[d]ecreased energy (fair energy)").

[25] Id. at 385, 638 (difficulty interacting with the public when "upset").

observations, and reflects greater limitations than the 2013 opinion. Because Dr. Nicholson's 2013 opinion is not significantly more favorable to Piper, remand for consideration of this perhaps improperly overlooked report is unnecessary. See [Zabala v. Astrue, 595 F.3d 402, 409-410 (2d Cir. 2010)](Zabala v. Astrue, 595 F.3d 402, 409-410 (2d Cir. 2010)).

Second, Piper contends that Dr. Nicholson's 2015 opinion was not, as the ALJ concluded in affording it "little weight," internally inconsistent. As the ALJ explained, Dr. Nicholson concluded that Piper had "marked social limitations and ability to maintain concentration, persistence or pace, but then notes that she is able to interact superficially with the public," and that she thought "she could work in an environment 'she enjoys', independently of others."[26] He further noted, despite finding that Piper had "marked limitations," that she could yet "maintain a schedule, follow instructions, set goals and maintain socially appropriate behavior."[27]

Piper attempts to overcome these inconsistencies by pointing to other ways in which the 2015 opinion is internally consistent.[28] For example, she points out that Dr. Nicholson found that Piper had difficulty with other aspects of social

---

[26] Admin. R. at 28.

[27] Id. at 28.

[28] Plaintiff's Mem. (doc. no. [8-1](8-1)) at 10-11.

11

functioning, such as getting along with co-workers or peers and an inability to accept criticism.[29] That some portions of Dr. Nicholson's 2015 opinion are internally consistent does not, however, undercut the ALJ's conclusion that other portions are inconsistent with one another.

Finally, Piper contends that the ALJ erred because he did not give "good reasons" for discounting Dr. Nicholson's opinion. The ALJ must "give good reasons" for the weight he affords a "treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2). To satisfy this requirement, the ALJ's order "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and reasons for that weight." Titles II & XVI: Giving Controlling Weight to Treating Source Med. Opinions, SSR 96-2P, 1996 WL 374188, at *5 (S.S.A. 1996).

Here, the ALJ explained that he discounted Dr. Nicholson's opinion because it was internally inconsistent.[30] He also found that it was inconsistent with other evidence in the record, such as Piper's continued employment and her ability to run errands

---

[29] Id. at 10.

[30] Admin. R. at 28.

12

and go camping independently.[31] The ALJ's explanations satisfy
the requirement that he give "good reasons" for discounting that
opinion. See 20 C.F.R. § 404.1527(c)(4) ("Generally, the more
consistent a medical opinion is with the record as a whole, the
more weight we will give to that medical opinion."); Hudon v.
Colvin, 2016 DNH 19, 6-7 (opinion's inconsistency with record
evidence satisfies the "good reasons" requirement); Couture,
2015 DNH 128, 6-7 (internal inconsistencies satisfy "good
reasons" requirement).

**Dr. Martin**. In addition to arguing that the ALJ erred in
discounting Dr. Nicholson's opinion, Piper contends that the ALJ
erred in giving "great weight" to the assessment of Dr. Martin,
the state agency psychological consultant because Dr. Martin had
not reviewed "the totality of the evidence."[32] She argues,
generally, that "the unviewed [sic] mental health records
supports [sic] Plaintiff's alleged limitations," and that
Dr. Martin's opinion was "inconsistent with [Piper's]
symptomology reported to her mental health providers, and
recorded by her primary care physician."[33]

---

[31] Id.

[32] Plaintiff's Mem. (doc. no. 8-1) at 8-9.

[33] Id. at 9.

13

As discussed supra, "an ALJ may rely on such an opinion where the medical evidence postdating the reviewer's assessment does not establish any greater limitations, or where the medical reports of claimant's treating providers are arguably consistent with, or at least not 'clearly inconsistent' with, the reviewer's assessment." Ferland, 2011 DNH 169, 11 (internal citations omitted). As with Piper's physical limitations, the ALJ considered evidence post-dating Dr. Martin's opinion, and explained how it did not support a more restrictive RFC.[34]

The only specific piece of evidence that Piper argues that Dr. Martin failed to consider is Dr. Nicholson's 2013 opinion.[35] However, Dr. Martin appears to have referenced that opinion in explaining that "[s]ources are L. Nicholson, MD (treating source) and J. Glick, LCMHC (treating) whose opinions are given weight."[36] Piper offers no other argument as to just how the evidence that Dr. Martin did not review supports her proposed limitations, or how his opinion is inconsistent with her later-reported symptoms. Such an undeveloped argument leaves nothing for the court to evaluate, or any basis for the court to

---

[34] Admin. R. at 26-29.

[35] Plaintiff's Mem. (doc. no. 8-1) at 8-9.

[36] Admin. R. at 85.

14

conclude that the ALJ erred.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

**IV.  Conclusion**

For the reasons discussed herein, Piper's motion to reverse and remand the Acting Commissioner's decision[37] is DENIED and the Acting Commissioner's motion to affirm[38] is GRANTED.  The Clerk of Court is directed to enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:   March 20, 2018

cc:  D. Lance Tillinghast, Esq.
     T. David Plourde, AUSA

---

[37] Document no. 8.

[38] Document no. 11.